IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANETRIA D. BETTS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-2016-G |
| | § | |
| WELLS FARGO HOME MORTGAGE, A | § | |
| DIVISION OF WELLS FARGO BANK, | § | |
| N.A., GOVERNMENT NATIONAL | § | |
| MORTGAGE ASSOCIATION, | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEMS, INC. | § | |
| CORNERSTONE MORTGAGE | § | |
| COMPANY, | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case was referred for pretrial management. Before the Court for recommendation is *Defendants' Motion to Dismiss and Brief in Support*, filed February 1, 2016 (doc. 9). Based on the relevant filings and applicable law, the defendants' motion to dismiss should be **GRANTED**.

## I. BACKGROUND

This case involves the attempted foreclosure of real property located at 1817 Reynolds Drive, Lancaster, Texas 75134 (the Property). (doc. 1-5 at 9; doc. 9 at 1.)[1] On June 1, 2015, Anetria D. Betts (Plaintiff) filed this action in state court against Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. (Wells Fargo), Governmental National Mortgage Association (GNMA), and Mortgage Electronic Registration Systems, Inc. (MERS) (collectively, Defendants), as well as Cornerstone Mortgage Company (CMC). (doc. 1-5.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

On or about January 31, 2011, Plaintiff executed a deed of trust securing payment of a note in the original principal amount of $141,964.00, made payable to CMC.  (doc. 9 at 2; doc. 10-1 at 2.)  The deed of trust provided that MERS was a beneficiary under the deed of trust and acted solely as nominee for the Lender and Lender's successors and assigns.  (*Id*.)  It also provided that MERS held legal title to the interests granted by Plaintiff in the deed of trust, and it had the right to exercise any and all of those interests, including the right to foreclose and sell the Property and to release and cancel the deed of trust.  (doc. 10-1 at 3.)  On August 31, 2011, pursuant a Corporate Assignment of Deed of Trust (the Assignment), MERS assigned to Wells Fargo the deed of trust and all beneficial interest under it.  (doc. 9 at 2; doc. 10-2 at 2.)  The Assignment was recorded in the Official Public Records of Dallas County on September 6, 2011.  (doc. 10-2 at 2-3.)

Plaintiff submitted her application for temporary restraining order and temporary injunction to stop a trustee sale scheduled for June 2, 2015.  (doc. 1-5 at 2.)  She claims that the defendants' actions in commencing foreclosure proceedings on the Property pursuant to the note and deed of trust are wrongful and violate the Texas Property Code, the Texas Rules of Civil Procedure, and the Texas Civil Practice and Remedies Code, among others.  (*Id*.)  Based on a "failure of a proper chain of title (due to the inability to show how the property was assigned from AMF to BNYM pursuant to Texas Local Government Code § 192.007(a)), and the lack of authority to proceed, any sale of the [P]roperty cannot go forward."  (*Id*.)  Plaintiff claims that she has a "clear legal" right to seek temporary and permanent injunctive relief because she resides in the Property, and the defendants are seeking to take possession, custody and control of it without satisfying the necessary legal standing requirements.  (*Id*. at 3.)  She seeks a temporary restraining order and a temporary injunction to restrain Defendants from conducting a non-judicial foreclosure sale of the Property and

evicting her from the Property.  (*Id*. at 3-9.)  Her petition may also be liberally construed as asserting

claims for wrongful foreclosure and fraud.  (*Id*. at 2-5.)

On June 12, 2015, Defendants removed the action to federal court asserting federal question

jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332.  (doc. 1.)  On

February 1, 2016, they moved to dismiss the petition for failure to state a claim.  (doc. 9.)

## II.  JURISDICTION

Here, Defendants contend that they removed this action based on diversity jurisdiction, but

they also briefly allege the existence of federal question jurisdiction.  ( at 4-5.)

Any civil action brought in state court may be removed to federal court if the district court

has original jurisdiction over that action.  28 U.S.C. § 1441(a).  A district court's original

jurisdiction is of two types: federal question jurisdiction and diversity jurisdiction.  28 U.S.C. §§

1331, 1332.  Federal question jurisdiction exists in all civil actions arising under the Constitution,

laws, or treaties of the United States.  *Id.* § 1331.  Diversity jurisdiction exists in all civil actions

where the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and there is

diversity of citizenship between the parties.  *Id.* § 1332(a).

### A.      Federal Question Jurisdiction

Federal question jurisdiction exists when a federal question is presented on the face of the

plaintiff's well-pleaded complaint. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004);

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987).  A complaint presents a federal question on its

face when it "establishes either that federal law creates the cause of action or that the plaintiff's right

to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duan*

*Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

The Supreme Court and the Fifth Circuit have consistently noted "the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Singh*, 538 F.3d 334 at 338 (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).  Even the "fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction." *Id*. (citation omitted).  A federal issue embedded in a state claim establishes federal jurisdiction only when: "(1) resolving [the] federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Id.* at 338. All four factors must be met. *See id.*

Here, Plaintiff simply claims that she is "pursuing multiple avenues of recovery to address the wrongful actions of Defendants; including federal and state causes of action." (doc. 1-5 at 6.) She only seeks relief under state law (injunctive relief), her petition can be liberally construed as bringing only state law claims (fraud and wrongful foreclosure), and she only claims that Defendants violated state statutes (the Texas Property Code, the Texas Rules of Civil Procedure, and the Texas Civil Practice and Remedies Code).  (*See id*. at 2-9.)  Her petition includes no jurisdictional assertions, and she has not alleged that her right to relief necessarily depends on resolution of a substantial question of federal law.  Although she claims that she is asserting federal causes of action, she does not identify or even mention any federal laws or statutes.  Nor does she make any allegations to support any federal cause of action against the defendants.  "Federal courts have no jurisdiction over state law claims in the absence of diversity jurisdiction under 28 U.S.C. § 1332." *Johnson v. Retail Plaza Inc*., No. 3:12–CV–5001–B, 2012 WL 6950308, at *1 (N.D. Tex. Dec. 31,

2012), *rec. adopted*, 2013 WL 323330 (N.D. Tex. Jan. 25, 2013).  Accordingly, Defendants have

not shown that federal question jurisdiction exists over this case.

**B.**      **Diversity Jurisdiction**

Because no federal question is presented, removal was proper only if Defendants have

met their burden of showing that there is diversity of citizenship between the parties. *See Cantor*

*v. Wachovia Mortg., FSB,* 641 F.Supp.2d 602, 605 (N.D.Tex.2009); *see also Merryman v.*

*JPMorgan Chase & Co.,* No. 3:12–CV–2156–MBH, 2012 WL 5409735, at *2 (N.D.Tex. Oct.12,

2012), *recommendation adopted,* 2012 WL 5409749 (N.D.Tex. Nov.5, 2012).

*1.*      *Diversity of Citizenship*

An action removable based on diversity jurisdiction may not be removed if "any of the

parties in interest properly joined and served as defendants is a citizen of the State in which such

action is brought." 28 U.S.C. § 1441(b).  A case that is removed under § 1332 must have "complete

diversity" of citizenship. *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005); *see also* 28 U.S.C.

§ 1332.  This means that a plaintiff may not share citizenship with any defendant. *Whalen v. Carter*,

954 F.2d 1087, 1094 (5th Cir. 1992).  The party asserting diversity jurisdiction must "distinctly and

affirmatively" allege the citizenship of all the parties. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841

F.2d 1254, 1259 (5th Cir. 1988); *McGovern v. Am. Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975)

(per curiam) (citations omitted).

Individuals are citizens of the states in which they are domiciled. *Coury v. Prot*, 85 F.3d

244, 249 (5th Cir. 1996).  Here, it is undisputed that Plaintiff is domiciled in Texas, and is therefore

a citizen of Texas.  (*See* doc. 1-5 at 2-3, 5-6; doc. 1 at 6.)  Defendants assert that Wells Fargo is a

citizen of South Dakota because Wells Fargo Bank, N.A.'s main office is located in South Dakota.

(doc. 1 at 6.)  For diversity jurisdiction purposes, a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located."  *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307  (2006).  Wells Fargo Bank, N.A.'s articles of association designate Sioux Falls, South Dakota, as the location of its main offices.  *Wells Fargo Bank, N.A. v. Anderson*, No. 3:11-CV-024-K, 2011 WL 1135121, at *3 (N.D.Tex. March 28, 2011); *Wells Fargo Bank, N.A. v. WMR e-pin, LLC*, Civil No. 08-5472 (JNE/FLN), 2008 WL 5429134, at *1 (D. Minn. Dec. 29, 2008). Because Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A., and Wells Fargo Bank, N.A.'s main office is located in South Dakota, Defendants have shown that Wells Fargo is a citizen of South Dakota.

Defendants contend that MERS is a citizen of Delaware and Virginia for diversity purposes because it is a Delaware corporation with its principal place of business in Virginia.  (doc. 1 at 7.) They also contend that GNMA is a citizen of the District of Columbia because it is a federally-charted corporation with its principal place of business and headquarters in Washington, D.C.  (*Id.*) "For diversity jurisdiction purposes, a corporation is a citizen of the state in which it was incorporated and the state in which it has its principal place of business."  *Getty Oil*, 841 F.2d at 1258 (citing 28 U.S.C. § 1332(c)).  "Allegations regarding the citizenship of a corporation must set out the principal place of business as well as the state of its incorporation." *Nadler v. American Motor Sales Corp.*, 764 F.2d 409, 413 (5th Cir. 1985)(citing *Neely v. Bankers Trust Co.*, 757 F.2d 621, 624 n. 18 (5th Cir. 1985)).  As MERS is a Delaware corporation and its principal place of business is in Virginia, Defendants have shown that it is a citizen of both Delaware and Virginia.  *See Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *2 (5th Cir. Mar. 28, 2011).  They have also shown that GNMA is a citizen of the District of Columbia for diversity purposes.

While they essentially concede that CMC is a non-diverse in-state defendant, Defendants argue that its Texas citizenship should be disregarded because it is an improperly joined defendant. (*Id*. at 7-8.) They contend that "it is clear from a review of the Petition that Plaintiff has not alleged any specific facts that would give rise to a viable claim against CMC."  (*Id*.)

### 2.     *Improper Joinder Analysis*

The improper joinder doctrine is a narrow exception to the complete diversity rule.  *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).  The doctrine ensures "that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity." *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (citation omitted).  It allows a court to disregard the citizenship of an improperly joined defendant in determining diversity.  *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc).  To show improper joinder, the removing defendant bears the heavy burden of showing either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573–74 (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).

Where, as here, the parties' citizenship is undisputed, "the inquiry [] focuses on the plaintiff's inability to establish a cause of action against the non-diverse party in state court." *Adams v. Chase Bank*, No. 3:11-CV-3085-M, 2012 WL 2122175, at *2 (N.D. Tex. May 11, 2012), *rec. adopted,* 2012 WL 2130907 (N.D. Tex. June 12, 2012).  The removing defendant must show there is no possibility of recovery by the plaintiff against the in-state defendant, i.e., no reasonable basis for predicting that the plaintiff might be able to recover against the in-state defendant. *Smallwood*, 385 F.3d at 572.  "If no reasonable basis for recovery exists, a conclusion can be drawn that the plaintiff's decision to join

the local defendant was indeed improper, unless the showing compels dismissal of all defendants."
*McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (emphasis omitted).

There are two proper means for predicting whether a plaintiff has a reasonable basis for recovery under state law. *Smallwood*, 385 F.3d at 573. Initially, a "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* (citation omitted). The court must take as true the plaintiff's well-pleaded allegations of fact and resolve any contested issues of fact or ambiguities in state law in the plaintiff's favor. *Cantor*, 641 F.Supp.2d at 608 (citations omitted). The court does not predict "whether the plaintiff will certainly or even probably prevail on the merits, but look[s] only for a possibility that he may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citation omitted). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. If "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* Although a matter for the court's discretion, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant." *Id.* at 573–74. The court may not move "beyond jurisdiction and into a resolution of the merits." *Id.* at 574.

Here, Plaintiff seeks injunctive relief to prevent "Defendants" from foreclosing on the Property, and her petition can also be liberally construed as seeking claims for wrongful foreclosure and fraud. (doc. 1-5 at 2-9.) Despite her allegations directed at unspecified "Defendants", none of the asserted facts giving rise to her claims implicate CMC. The claims are based on her allegations

that the foreclosing parties failed to provide a proper chain of title in order to establish their right to foreclose, and the foreclosing parties failed to establish that they are the creditor or holder in due course. (*Id*. at 3-4, 8.)  These allegations do not relate to CMC as the original lender and mortgagee, and its status is clearly identified in the deed of trust.  There is no reasonable basis in the petition or in the record to conclude that CMC is the party seeking to foreclose on the Property.  As discussed below, under a Rule 12(b)(6)-type of analysis, Defendants have met their heavy burden to show there is no reasonable basis for predicting Plaintiff might recover against CMC on any of her claims.  The joinder of CMC was therefore improper, and its citizenship does not defeat removal jurisdiction premised on diversity of citizenship.  *See Smallwood*, 385 F.3d at 572–73.  CMC is subject to dismissal from this lawsuit as an improperly joined party.  *See Griggs v. State Lloyds*, 181 F.3d 694 (5th Cir. 1999); *Kling Realty Co. v. Chevron USA, Inc*., 575 F.3d 510 (5th Cir. 2009)(affirming dismissal of improperly joined defendant).  Accordingly, Defendants have met their burden to show that complete diversity of citizenship exists in this case.

## III.  MOTION TO DISMISS

Defendants move to dismiss Plaintiff's petition under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 9.)

## A.    <u>Legal Standard</u>

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It

is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz  Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003).  It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Defendants attach to their motion copies of the deed of trust and the Assignment.  (docs. 10-1, 10-2.)  The deed or trust is referenced in Plaintiff's petition and is central to her claims, and it is therefore considered part of the pleadings.  The deed of trust and the Assignment are matters of public record that can be judicially noticed in considering a Rule 12(b)(6) motion.  *See* Fed. R. Evid. 201(b)(2); *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds and assignments").  Because the documents attached to

Defendants' motion to dismiss are part of the pleadings or subject to judicial notice, they may be considered without conversion of their motion into a motion for summary judgment. *See Norris*, 500 F.3d at 461 n.9.

## B.        "Show-me-the-note" Theory

Defendants argue that any claims based on Plaintiff's allegations that they made representations regarding their status as a creditor and holder in due course fail as a matter of law because those allegations implicate the "show-me-the-note" theory.  (doc. 9 at 4.)

Plaintiff contends, as part of her application for temporary injunction, that given Defendants' misrepresentation regarding their claim to be the creditor and holder in due course, she is under reasonable apprehension that they will unlawfully make presentment or begin foreclosure proceedings.  (doc. 1-5 at 8.)  Her allegations that Defendants misrepresented their statutes as holder in due course and will unlawfully make presentment implicates the "show-me-the-note" theory. *See Carrie v. Chase Home Finance*, No. 3:12-cv-852-G, 2013 WL 704943, at *4 (N.D.Tex. Feb.1, 2013)*, rec. adopted,* 2013 WL 705865 (N.D.Tex. Feb. 27, 2013).   "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at *2 (W.D. Tex. Apr. 26, 2011) (internal quotations omitted).  This theory has been widely rejected by courts in Texas. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254–55 (5th Cir. 2013).  "Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*,  No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011).

Under Texas law, promissory notes and deeds of trust are distinct obligations that afford

lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03–11–00644–CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug.30, 2012, no pet.) (mem.op.) (to same effect). When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).[2] By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3. Chapter 51 of the Texas Property Code governs the procedure for enforcing the "power of sale conferred by a deed of trust or other contract lien." Tex. Prop. Code Ann. § 51.002 (West 2007).

Courts have held that where MERS, a "book entry system", is the "mortgagee" and "is given the power of sale under the deed of trust, then it has the power of sale." *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *2 (N.D. Tex. July 12, 2012).[3] "MERS also has the authority to transfer the power of sale *by assigning the deed of trust*." *Id.* (emphasis added); *accord Enis*, 2012 WL 4741073, at *2 ("Because under the deed of trust MERS held the power of sale, BOA received that power when it was assigned the deed of trust."). Moreover, courts in this Circuit have also held that the transfer of the note or deed of trust automatically transfers the other because they "must be read . . . and construed together as a single instrument." *Warren v. Bank of*

---

[2]  The Texas Uniform Commercial Code (UCC) governs the procedure for establishing "holder" status. *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203,and 3.204 (West 2002) (providing the requirements for the negotiation, transfer, and endorsement of negotiable instruments).

[3]A "mortgagee" is "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code Ann. § 51.0001(4)(A)–(C).

*Am., N.A.*, No. 3:11-CV-3603-M, 2012 WL 3020075, at *4 (N.D. Tex. June 19, 2012), *rec.adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012); *Islamic Ass'n of DeSoto, Texas, Inc.v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.) ("[T]he transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions.") (internal quotations omitted); *Kramer v. Fannie Mae*, No. A-12-CA-276-SS, 2012 WL 3027990, at *5 (W.D. Tex. May 15, 2012) (same) (listing cases).

Here, MERS was the original mortgagee because it is a "book entry system" and was the "beneficiary" of the deed of trust. *See* Tex. Prop. Code § 51.0001(4)(A)–(B); (*see also* doc. 10-1 at 2). When it assigned the deed of trust, Wells Fargo became the new mortgagee and acquired all of MERS's rights. *See* Tex. Prop. Code § 51.0001(4)(A),(C). As the new mortgagee, Wells Fargo had all of the rights that Plaintiff granted the lender under the deed of trust, including the power of sale on default. *See id.*; (*see also* doc. 23 at 24; doc. 25-2 at 8). Wells Fargo could exercise that right without having to produce the original promissory note. *See Martins*, 722 F.3d at 255; *Asonibe v. Flagstar Bank, FSB*, No. 3:12-CV-2113-M BH, 2013 WL 1828842, at *6 (N.D. Tex. Apr. 5, 2013), *rec. adopted*, 2013 WL 1831747 (N.D. Tex. Apr. 30, 2013) ("As the new mortgagee, Defendant could foreclose on the Property upon Plaintiffs' default without having to produce the note or deed of trust.").

Plaintiff's allegation that Defendants misrepresented their statuses as creditor and holder in due course and will unlawfully make presentment is therefore unavailing. *See Martins*, 722 F.3d at 255. To the extent any of Plaintiff's claims are based on her "show-me-the-note" theory, the claims are subject to dismissal for failure to state a claim.

14

B.      **Wells Fargo's Authority to Foreclose**

Defendants argue that Plaintiff's allegations that they lack authority to foreclose because they have not shown a proper chain of title do not support her claims.  (doc. 9 at 7.)  They contend that although she fails to identify which defendant initiated foreclosure, the chain of title between the original beneficiary named in the deed of trust, MERS as nominee for CMC and its successors and assigns, and Wells Fargo as the mortgagee of record, is unbroken and without gaps.  (*Id*.)

When a party who is not named in the original deed of trust seeks to foreclose, it must be able to trace its rights under the deed of trust back to the original holder.  *See Rice v. Bank of New York*, No. 4:11-CV-4220, 2012 WL 3685981, at *2 (S.D.Tex. Aug. 24, 2012).  Absent proof that it is the current mortgagee of the subject property, a servicing entity or alleged mortgagee has no right to foreclose under Texas law.  *See id.*; *Shelton v. Flagstar, F.S.B.*, No. H-11-3805, 2012 WL 1231756, at *2 (S.D.Tex. Apr. 12, 2012).  The chain of title can be proven in several ways, including but not limited to, documents filed of record in the county clerk's office and an unbroken chain of assignments from the original mortgagee.  *See* Tex. Prop. Code § 51.0001(4)(C)("[I]f the security interest has been assigned of record, the last person to whom the security interest has been assigned of record" is the mortgagee); *Leavings v. Mills*, 175 S.W.3d 301, 313-314 (Tex. App.–Houston [1st Dist.] 2004, no pet.).

Plaintiff has alleged that the foreclosure sale cannot go forward because there is not a proper chain of title due to Defendants' inability to show how the property was assigned from "AMF" to "BNYM" pursuant to Tex. Loc. Gov't Code § 192.007(a).  (doc. 1-5 at 2.)  She also claims that their failure to show a proper chain of title to establish their right to foreclose under the Texas Property Code as a mortgagee or mortgage servicer is clearly fraudulent conduct.  (*Id*. at 3.)

15

As outlined above, the pleadings show a proper chain of title from the original mortgagee, CMC, to Wells Fargo. MERS was the original mortgagee because it is a "book entry system" and was the "beneficiary" of the deed of trust. *See* Tex. Prop. Code § 51.0001(4)(A)–(B); (*see also* doc. 10-1 at 2). As the beneficiary, it held legal title to the interests granted by Plaintiff in the deed of trust, and it had the right to exercise those interests, including the right to foreclose. (doc. 10-1 at 3.) When it assigned the deed of trust pursuant to the Assignment, which was recorded on September 6, 2011, Wells Fargo became the new mortgagee and acquired all of MERS's rights. (*See* doc. 10-2 at 2); Tex. Prop. Code § 51.0001(4)(A),(C). As the new mortgagee, Wells Fargo had all of the rights that Plaintiff granted CMC under the deed of trust, including the power to sell the Property upon Plaintiff's default. *See id.*; (*see also* doc. 23 at 24; doc. 25-2 at 8.) Any claims based on Plaintiff's challenge to the chain of title are therefore subject to dismissal for failure to state a claim.

## C.  **Wrongful Foreclosure**

Defendants also contend that Plaintiff's "attempted" wrongful foreclosure claim fails as a matter of law because it is based on its fatally flawed "show-me-the-note" theory and rejected chain of title challenge. (doc. 9 at 8.) They contend that the claim also fails because Texas does not recognize a cause of action for an attempted wrongful foreclosure. (*Id*.) Finally, they note that because no foreclosure occurred, Plaintiff cannot state elements for a wrongful foreclosure claim, and her possession of the Property precludes her from recovering damages under a wrongful foreclosure claim. (*Id*., n. 5.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may

recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-cv-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2. Recovery is not available merely upon the showing of a defect in the foreclosure process; "it is also necessary that there be [a] [grossly] inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Plaintiff alleges that Defendants' actions in commencing foreclosure are wrongful given their failure to show a proper chain of title and their misrepresentations regarding their claim to be a creditor and holder in due course. (doc. 1-5 at 2, 8.) Because Plaintiff's wrongful foreclosure claim is based on her invalid "show-me-the-note" theory as well as her invalid contention that the defendants have failed to show a proper chain of title, her wrongful foreclosure claim necessarily fails. Additionally, her petition does not state any facts supporting the elements of a wrongful foreclosure claim. Given her request for injunctive relief to stop a foreclosure sale (doc. 1-5 at 2-9), she cannot allege that the Property has been sold for a grossly inadequate price. *See Lucas v. Ocwen Home Loan Servicing,* No. 3:13-CV-1057-G, 2014 WL 7059274, at *8 (N.D.Tex. Nov. 21, 2014),

*rec. adopted*, 2014 WL 7146033 (N.D.Tex. Dec. 12, 2014)(finding mortgagee failed to state a wrongful foreclosure claim where the Property had not been sold); *Medrano v. BAC Home Loans Servicing, LP.*, No. 3:10–CV–02565–M (BF), 2012 WL 4174890, *3 (N.D. Tex. Aug.10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas law.").   Moreover, her statement that she still resides in the Property (doc. 1-5 at 3) is fatal to any wrongful foreclosure action, since recovery for wrongful foreclosure "is based on the mortgagor's [lost] possession." *See Petersen v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.) (holding that "[w]here the mortgagor's possession is undisturbed, he has suffered no compensable damage"). Accordingly, Defendants' motion to dismiss the wrongful foreclosure claim should be granted.

**D.**   **Fraud**

Defendants argue that to the extent Plaintiff contends that the alleged "creditor/holder in due course" misrepresentations support a fraud claim, such claim fails as a matter of law because her allegations fail to meet Rule 9(b)'s heightened pleading requirements and because no misrepresentations were made  regarding "creditor/holder in due course status."  (doc. 9 at 7 n. 4.)

In Texas, the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010).

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the

18

circumstances constituting fraud with particularity.  *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations omitted).  A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim.  *McCall v. Genentech, Inc.*, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

Here, Plaintiff alleges that Defendants' fraudulent conduct is clearly evidenced by their failure to provide a proper chain of title to establish a right to foreclosure under the Texas Property Code as mortgagee and mortgage servicer. (doc. 1-5 at 3.)  She claims that given their misrepresentations and omissions regarding the documents, she is under reasonable apprehension that they will have her removed from the Property before an evidentiary hearing of the case occurs.  (*Id*. at 4.)  She also claims that given their misrepresentations regarding their claims to be a creditor and a holder in due course, she is under reasonable apprehension that they will unlawfully make presentment or begin foreclosure proceedings.  (*Id*. at 8.)

Although Plaintiff identifies the "who" and "what" with respect to her fraud claim, she fails to allege the "how," "where," and "when" with respect to any fraud claim.  *See Benchmark Elecs.*, 343 F.3d at 724.  Without more, her allegations fail to meet the heightened pleading requirements of

Rule 9(b).  Also, her allegations cannot plausibly entitle her to relief because they do not allege that Defendants made a material false representation to her upon which she relied to her detriment.  *See Grisham v. Deutsche Bank Trust Co. Americas*, No. 4:11-cv-3680, 2012 WL 2568178, at *4 (S.D.Tex. June 28, 2012)(dismissing fraud claim for failure to state a claim where the plaintiff alleged that the defendant "committed fraud by manufacturing documentation to support its alleged ownership of the Note" but he did "not contend that [the defendant] made this material representation to *him*")(emphasis added).  Plaintiff's fraud claim  fails and should be dismissed under Rule 9(b) for failure to meet the rule's heightened pleading requirements and under Rule 12(b)(6).[4]

## E.    Injunctive Relief

Finally, Defendants seek to dismiss Plaintiff's request for injunctive relief for failure to state a viable claim.  (doc. 9 at 9.)

To obtain injunctive relief, a plaintiff "is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"  *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Here, Plaintiff seeks a temporary restraining order and a temporary injunction to prevent Defendants from foreclosing on, and from evicting her from, the Property.  (doc. 1-5 at 2-9.)  Because dismissal of all of her claims is warranted on the merits, she

---

[4]Defendants also argue that Plaintiff's fraud claim is barred by the "economic loss doctrine."  (doc.9 at 7 n. 4.)  They reason that Plaintiff has not alleged any independent injury outside of the alleged economic losses arising from the subject matter of the contract between the parties, *i.e.* the deed of trust.  (*Id.* at 8 n.4.)  Courts in the Fifth Circuit have held that this rule does not apply to fraud claims.  *See, e.g.*, *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 764 (N.D. Tex. 2012); *Experian Info. Solutions, Inc. v. Lexington Allen, L.P.*, No. 4:10–CV–144, 2011 WL 1627115, at *12 (E.D. Tex. Apr.7, 2011) ("The economic loss rule does not apply to fraud claims.") (collecting cases); *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, No. 1:07–CV–111, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009) (holding that the economic loss doctrine did not bar a fraudulent misrepresentation claim because the parties had an independent duty not to commit the intentional tort of fraud); *Gruber v. Deuschle*, No. 300–CV–0017–L, 2002 WL 523957, at *7 (N.D.Tex. Apr. 5, 2002) (holding that fraudulent inducement claims were not subject to the economic loss rule under Texas law).

cannot establish any likelihood of success on the merits.  *See Jackson*, 2011 WL 3874860, at *3.

Accordingly, Defendants' motion to dismiss her request for injunctive relief should be granted.

## IV.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2.  A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal.  *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1.  Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint.  *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not amended her complaint since filing this action.  However, all of her claims fail as a matter of law because they are premised on an invalid legal theory and her failed contention that the defendants have not shown a proper chain of title.  It therefore appears that she

has pled her best case, and all her claims against Defendants should be dismissed with prejudice without further opportunity to amend.

## V. RECOMMENDATION

CMC should be *sua sponte* dismissed from the lawsuit as an improperly joined defendant.

Defendants' motion to dismiss should be **GRANTED**, and Plaintiff's claims should be **DISMISSED with prejudice**.

**SO RECOMMENDED** on this 13th day of June, 2016.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

22